## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JORDAESHA BURLESON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-22-575-G** |
| | ) | |
| **CITY OF WARR ACRES, a** | ) | |
| **municipal corporation, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

Now before the Court is a Partial Motion to Dismiss (Doc. Nos. 4, 12) filed by Defendant City of Warr Acres. Plaintiff Jordaesha Burleson has responded (Doc. No. 6), Defendant has replied (Doc. No. 7), and the matter is now at issue.

### I.    *Background*

Plaintiff initially filed this action in Oklahoma County District Court on December 20, 2021. *See* Pet. (Doc. No. 1-2). Plaintiff's claims arise out of an incident involving Plaintiff, Plaintiff's son Bryson Deloney, and Warr Acres officials at Plaintiff's home on March 22, 2020. *See* Am. Compl. (Doc. No. 1-3) ¶¶ 9-27.

Plaintiff's Amended Complaint raises federal constitutional claims pursuant to 42 U.S.C. § 1983, as well as a claim for assault and battery under Oklahoma law, against Defendant.

### II.    *Relevant Standards*

A motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure takes one of two forms: a facial attack or a factual

attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015).[1]  Here, Defendant raises a factual attack, "go[ing] beyond allegations contained in the complaint and challeng[ing] the facts upon which subject matter jurisdiction depends."  *Id.* (internal quotation marks omitted).  Thus, the Court does not presume the truthfulness of the Amended Complaint's factual allegations and may consider the documents submitted by the parties "to resolve disputed jurisdictional facts."  *Id.* (internal quotation marks omitted); *see* Def.'s Ex. 1 (Doc. No. 12-1); Pl.'s Ex. 1 (Doc. No. 13).  As the party asserting federal jurisdiction, Plaintiff bears "the burden of alleging the facts essential to show jurisdiction." *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002) (internal quotation marks omitted).

### III.    Defendant's Motion

Defendant seeks dismissal of Plaintiff's state-law assault-and-battery claim due to Plaintiff's failure to comply with the statutory prerequisites of the Oklahoma Governmental Tort Claims Act ("OGTCA" or "GTCA"), Okla. Stat. tit. 51, §§ 151 et seq.  Specifically, Defendant argues that Plaintiff failed to file this lawsuit in accordance with the time limit prescribed by the OGTCA.

"The OGTCA is the exclusive remedy by which an injured party may recover against a governmental entity for a tort claim." *Deboard v. Comanche Cnty. Ct. Clerk*, No. CIV-12-192-M, 2012 WL 1508738, at *1 (W.D. Okla. Apr. 25, 2012) (citing Okla. Stat.

---

[1] Although Defendant also cites Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), this Court generally considers motions to dismiss for failure to comply with the cited notice and filing requirements pursuant to Rule 12(b)(1).  *See, e.g.*, *Martinez ex rel. N.M. v. Ryel*, No. CIV-20-833-F, 2020 WL 6555946, at *8-9 (W.D. Okla. Nov. 6, 2020).

tit. 51, § 153(B)).  "In order to recover under the OGTCA, a person must comply with the OGTCA's claim and notice provisions prior to filing a lawsuit."  *Id.*

The OGTCA provides that a plaintiff must present his or her claim against the "state or a political subdivision" "within one (1) year of the date the loss occurs."  Okla. Stat. tit. 51, § 156(B).  As noted, Plaintiff's suit arises out of an incident that transpired on March 22, 2020.  *See* Am. Compl. ¶ 9.  Plaintiff presented her notice of tort claim "on or about March 22, 2021."  *Id.* ¶ 4.  Defendant does not dispute that Plaintiff's initial notice of tort claim was timely presented within the one-year statutory deadline.

The OGTCA further prescribes:

A. A person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part.  **A claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the state or political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period.**  If the state or a political subdivision approves or denies the claim in ninety (90) days or less, the state or political subdivision shall give notice within five (5) days of such action to the claimant at the address listed in the claim.  If the state or political subdivision fails to give the notice required by this subsection, the period for commencement of an action in subsection B of this section shall not begin until the expiration of the ninety-day period for approval.  The claimant and the state or political division may continue attempts to settle a claim, however, settlement negotiations do not extend the date of denial unless agreed to in writing by the claimant and the state or political subdivision.

B. **No action for any cause arising under this act, Section 151 et seq. of this title, shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section.**  The claimant and the state or political subdivision may agree in writing to extend the time to commence an action for the purpose of continuing to attempt settlement of the claim except no such extension shall be for longer than two (2) years from the date of the loss.

Okla. Stat. tit. 51, § 157 (emphasis added).  The OGTCA "requires strict enforcement of a 90—plus 180—day jurisdictional limitation period after notice."  *Griffey v. Kibois Area Transit Sys. (KATS)*, 328 P.3d 687, 689 (Okla. Civ. App. 2013).  A "failure to meet the 180-day time limit operates to bar judicial enforcement of a claim against the government."  *Cruse v. Bd. of Cnty. Comm'rs of Atoka Cnty.*, 910 P.2d 998, 1004 (Okla. 1995).

The parties agree that Plaintiff's claim ultimately was "deemed denied" due to the City of Warr Acres' failure to approve the claim "within ninety (90) days."  Okla. Stat. tit. 51, § 157(A).  The parties disagree, however, on the date of that deemed denial and hence on the date that Plaintiff's 180-day deadline to file this lawsuit commenced.

Plaintiff argues that, even if otherwise untimely, her suit is properly before this Court because the 90-day deemed-denial period was tolled by requests from Defendant's insurer for more information after the notice of tort claim was presented.  *See* Pl.'s Resp. at 7-9 (citing *Bivins v. State ex rel. Okla. Mem'l Hosp.*, 917 P.2d 456 (Okla. 1996)).

In *Bivins*, the Oklahoma Supreme Court held that "a government's request for additional information from a plaintiff creates a legitimate expectation to assume the 90 days for approval or denial of the claim would commence anew upon a timely response by plaintiff."  *I.T.K. v. Mounds Pub. Schs.*, 451 P.3d 125, 144 (Okla. 2019) (emphasis omitted).  More specifically, the Court held:

> [A] claimant—who, while pressing for statutory tort redress against a public agency, responds within a reasonable or stated time to (or gives the reason for not complying with) a government's post-notice request for more information about the claim—has in law a legitimate expectation to assume that (1) the agency request is made in good-faith pursuit of necessary information and not for the purpose of lulling the claimant into a sense of false security, (2) the perceived deficiency to be supplied in response to the

4

request will be treated as submission of a completed claim's notice that is to be considered anew, and (3) the new submission's processing will take the full statutory time of 90 days during which the investigation and evaluation must stand undisturbed by litigation.

. . . .

The time of the completed submission clearly must be viewed as triggering anew the 90-day bar. . . . . In short, the 90-day bar of suit should be regarded as running from the timely filing of a completed claim's notice made at the government's request, rather than from the earlier receipt of one found deficient or otherwise perceived as unsuitable for processing.

. . . .

We accordingly hold that when a public entity, after receiving timely notice of a claim, calls for more information, the claimant should cooperate within a reasonable or stated time by supplying the available data requested or by giving a satisfactory reason for not complying with the request. . . . . During the interval between the request for further information and its timely submission, the then-pending 90-day period—initially triggered by the earlier (perceived as deficient or flawed) notice—must be treated as legally arrested and erased. The time bar will not start running again until the critical information is supplied (within some reasonable or stated time) or the claimant timely explains satisfactorily why this cannot be done. Since the effect we ascribe to an agency's post-notice request for more data is drawn from the government's perceived need for more time to evaluate the completed information about a claim, today's rule will neither benefit nor apply to any claimant-initiated (voluntary) submission of additional data.

*Bivins*, 917 P.2d at 461-63 (emphasis and footnote omitted).

The record reflects that on June 1, 2021—after Plaintiff had presented the notice of tort claim on March 22, 2021—Plaintiff's counsel contacted Defendant's insurer to inquire as to what further documentation was needed. *See* Pl.'s Ex. 1, at 1. On June 8, 2021, the insurer's claims manager e-mailed Plaintiff's counsel and stated: "I have received the photographs you forwarded but still need all of the medical bills and records for both of your clients. Also if there are any statements or videos." *Id.* On June 16, 2021, Plaintiff's

5

counsel responded and asked if the insurer needed an itemized bill.  *See id.* at 2.  The claims

manager answered that same day that it needed "[i]temized bills and records that state all

they were treated for, etc."  *Id.* at 3.  Plaintiff's counsel then submitted materials to the

insurer via e-mail on June 21, 2021, and June 22, 2021.  *See id.* at 5-7.

On July 8, 2021, Plaintiff's counsel e-mailed the claims manager and asked, "Per

Oklahoma Statutes, should we gather that this claim has been denied and proceed forward

with other legal remedies?"  *Id.* at 9.  The claims manager replied on that same date:

> I am still waiting on a little information on my end and will then discuss with
> our legal department.  You are within your rights to file suit now that the 90
> days ha[ve] passed but I have not made a liability determination at this point
> but anticipate that happening very soon.

*Id.*

Having considered the relevant correspondence, the Court concludes that the

insurer's June 8, 2021 request for additional information, and Plaintiff's prompt response

to that request, acted to toll the 90-day period for denial of the claim.  The claims manager's

"post-notice request for more complete information" cannot "logically be equated with the

government's silence, i.e.[,] with its lack of response which the statute requires to be taken

as the claim's denial."  *Bivins*, 917 P.2d at 462 (emphasis omitted).  "Rather, it must be

regarded as clearly incompatible not only with the notion of denial—this so because no

rational agency official would press to know more about a patently unmeritorious claim—

but also with the initial submission's continued consideration."  *Id.* (emphasis omitted).

Defendant focuses upon the claims manager's July 8, 2021 representation that

Plaintiff was now within her rights to file suit, suggesting that this representation shows

that the insurer did not find itself unable to meaningfully consider the claim prior to Plaintiff's counsel's provision of the additional information. *See* Def.'s Mot. (Doc. No. 12) at 1-2. The Court disagrees with this speculative argument. "In every public entity's post-notice request for more information dwells its implied declaration that the earlier notice is to be regarded as deficient (or otherwise unfit for consideration) and is hence, at best, to be treated as only an inchoate filing." *Bivins*, 917 P.2d at 462 (emphasis omitted). "No prudent person would believe that risk managers will continue to process notice they deem deficient or one they view as having no semblance of validity." *Id.* (emphasis omitted). Plaintiff's counsel would have had "a legitimate expectation to assume that" the claims manager's request was "made in good faith pursuit of necessary information." *Id.* at 461 (emphasis omitted). Such a request "cannot be cavalierly dismissed as utterly without consequences upon the then-pending 90-day bar-of-suit interval." *Id.* at 463.

Further, as explained in *Bivins*, Defendant was "not without means to protect itself from an open-ended effect which may flow from an initial notice (found deficient) that is to be supplemented at the agency's request." *Id.* at 464. An agency "may (a) direct that supplemental information must be received on or before a stated date and (b) make it clear that if neither submission nor satisfactory explanation is timely made, the deficient claim's notice will stand denied at the end of the initially triggered 90-day period or at some other date that follows the deadline for submission of supplemental data." *Id.* (emphasis omitted). The record does not reflect that Defendant took any such steps or otherwise "conditioned the reinstatement of the 90-day period on a reasonably timely response" by Plaintiff. *Crockett v. Cent. Okla. Transp. & Parking Auth.*, 231 P.3d 748, 754 (Okla. Civ.

App. 2010).  "Consequently, the [June 8, 2021 e-mail] suspended the initiation of the 90-day approval period without imposing a date on which it would began to run."  *Id.*

Plaintiff's counsel submitted the last of the requested materials on June 22, 2021.  *See* Pl.'s Ex. 1, at 6-7.  "[U]pon [Plaintiff's] compliance with the request of [Defendant's] insurer," at the earliest, "a new 90-day period for action then arose under § 157(A)."  *Wallace v. Bd. of Cnty. Comm'rs of Tulsa Cnty.*, 15 P.3d 985, 989 (Okla. Civ. App. 2000); *accord Davis v. Indep. Sch. Dist. No. 89 of Okla. Cnty.*, 136 P.3d 1059, 1062-63 (Okla. Civ. App. 2006); *see Bivins*, 917 P.2d at 462.  Accordingly, Plaintiff's claim was deemed denied 90 days later, on September 20, 2021.  *See* Okla. Stat. tit. 51, § 157(A).  The 180-day follow-on filing deadline thus expired on or about March 19, 2022—well after Plaintiff commenced this lawsuit.  *See id.* § 157(B).  It follows that Defendant has not shown a lack of this Court's jurisdiction over Plaintiff's state-law claim pursuant to the OGTCA and Rule 12(b)(1).[2]

CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss (Doc. Nos. 4, 12) is DENIED.

---

[2] In light of this disposition, the Court need not consider the parties' additional dispute—i.e., the date of expiration of Plaintiff's deemed-denial period absent any tolling—but notes that this Court has previously applied the relevant Oklahoma authorities to hold that expiration of the 90-day period is not affected by the final day of that period falling on a Sunday.  *See Hale v. Indep. Sch. Dist.*, No. CIV-16-1279-C, 2017 WL 239391, at *1-2 (W.D. Okla. Jan. 19, 2017).

IT IS SO ORDERED this 24th day of February, 2023.

CHARLES B. GOODWIN
United States District Judge